UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN W. MUNSELL, *et al.* )<br>)<br>Plaintiffs,   )<br>)<br>v.   )<br>)<br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE, *et al.*   )<br>)<br>Defendants.   )<br>) | Civil Action No. 04-1745 (RCL) |

**MEMORANDUM OPINION**

This matter comes before the Court on the plaintiff's Motion [49] for Discovery on Jurisdictional and Exhaustion Issues. Having considered the plaintiff's motion, the opposition thereto, the defendants' previous Motions to Dismiss [27, 28] and the plaintiffs' opposition thereto, the Court will deny the plaintiff's Motion for Discovery on Jurisdictional and Exhaustion Issues and grant the defendants' Motions to Dismiss. The Court agrees with the defendants' assertion that plaintiff has failed to exhaust all administrative remedies as required by the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994. 7 U.S.C. § 6912(e) (2002). As the jurisdictional finding is dispositive, the Court will disregard as irrelevant the other issues raised by defendants (i.e., standing, mootness). Further, the Court finds that plaintiffs, having failed to allege that they have exhausted administrative remedies, have no grounds to request discovery on that question under Federal Rule of Civil Procedure 56(f). The Court will disregard the remainder of the plaintiffs' Motion as a result of the Court's lack of jurisdiction.

1

## BACKGROUND

Plaintiffs John W. Munsell of Montana Quality Foods and Processing ("MQF") and the American Association of Meat Processors allege that defendants, the United States Department of Agriculture ("USDA") and Dr. Nathaniel Clark, vindictively employed regulatory actions against MQF in retaliation for MQF's insistence that the USDA undertake efforts to trace the source of bacterial contamination back to MQF's beef suppliers.

MQF was in the business of buying ten-pound lots of coarse ground beef ("chubs") from larger meat suppliers and further processing the beef for sale to individual consumers. On January 28, 2002, the USDA's Food Safety Inspection Service ("FSIS") alerted Munsell that a ground beef sample taken from MQF's facilities 5 days prior tested positive for *Escherichia coli* O157:H7 contamination ("E. coli"). This strain of E. coli can cause severe foodborne illness, possibly resulting in death. Munsell alleges that the USDA imposed "a form of strict liability on small plants" for contaminated meat processed in those plants, without regard to the possibility of the meat's contamination prior to processing. (Am. Compl. ¶ 18.) As a result of the positive E. coli test, MQF initiated a recall of 270 pounds of beef. (*Id*. ¶ 21.) Further, MQF was required to amend its Hazard Analysis and Critical Control Point plan ("HACCP") to address the source of the E. coli contamination.

Munsell believed the source of the contamination to be one of MQF's suppliers, so he sought to amend the plan to account for the source of all the meat products in MQF's facilities. (*Id*. ¶ 25.) Munsell alleges that FSIS inspectors refused to test unopened chubs, based on its policy of not inspecting chubs received from a supplier bearing USDA approval. (*Id*.) As a result of this refusal, Munsell undertook a series of communications for which he alleges that he

suffered retaliatory action at the hands of the USDA. Munsell claims to have lodged complaints against FSIS' policy on at least four occasions. First, on February 4 and 5, 2002, Munsell complained to Dr. Nathaniel Clark, District Manager of the FSIS District encompassing MQF's facilities. (*Id*. ¶ 30.) Then, on February 7, 2002, Munsell complained to the office of Senator Max Baucus. (*Id*. ¶ 31.) Third, on February 8, 2002, Munsell complained to the office of Congressman Denny Rehberg. (*Id*.) On February 25, 2002, Munsell complained to "USDA officials and Congressional staffs." (*Id*. ¶ 32.) Finally, on February 27, 2002, Munsell alleged, to Senator Baucus' office, that Munsell's complaints were subjecting MQF to retaliation. (*Id*. ¶ 33.)

Munsell alleges that Clark contacted him on February 26, 2002, to notify him that FSIS planned to suspend inspection of MQF's facilities (and consequently, approval of its product), reasoning that the E. coli contamination of MQF's beef was sufficient to sustain a determination that MQF's HACCP plan was inadequate. (*Id*. ¶ 40.) On March 12, 2002, Clark told Munsell that FSIS would hold MQF's suspension in abeyance, based on what Munsell alleges was an "economically coerced" concession: that MQF would engage in costly sampling of incoming chubs. (*Id*. ¶ 41.) Munsell claims that between February 26 and July 1, 2002, the FSIS "arbitrarily and capriciously" required MQF to rewrite its HACCP plan on at least ten separate occasions, threatening the withdrawal of inspectors for failure to comply. MQF claims that due to FSIS' conduct, it was unable to grind its own beef – beef not purchased as chubs from large plants – from February 26 to July 3, 2002. (*Id*. ¶ 43.)

As a result of the damages MQF and Munsell suffered due to the USDA's alleged conduct, on October 13, 2004, plaintiffs brought this suit against the USDA, along with a *Bivens*

claim against defendant Clark.  *See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (concluding that a constitutional cause of action, with monetary remedy, existed for defendants' violation of plaintiff's Fourth Amendment rights).

## DISCUSSION

### I. Legal Standard for Dismissal

A court *must* dismiss any action that it lacks the subject matter jurisdiction to hear, at any stage of the proceedings when the absence of jurisdiction is made apparent – through motion of the parties or the on court's own initiative.  FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1240, 1244 (Feb. 22, 2006).  In determining whether it has jurisdiction to adjudicate a case, a court will construe the complaint liberally, and allow the plaintiff all reasonable inferences in his favor.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In claims brought pursuant to a federal statute, courts examine whether a statutory requirement is a prescribed part of the claim, or whether Congress intended the requirement to be jurisdictional in nature.  *See Arbaugh*, 126 S. Ct. at 1245.  If a requirement is jurisdictional, failure to meet it must result in dismissal under Federal Rule of Civil Procedure 12(b)(1).  Accordingly, "if the statute *does* mandate exhaustion, a court *cannot* excuse it." *Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (citing *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 13 (2000)) (emphasis added).

Further, and of particular consequence in this case, is the rule that constitutional claims do *not* automatically confer subject matter jurisdiction on federal courts when other claims against the defending party, premised on the same facts, would be subject to a jurisdictional exhaustion requirement.  *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996)

(citing *Steadman v. Gov'r, U.S. Soldiers' & Airmen's Home*, 918 F.3d 963, 967 (D.C. Cir. 1990)); *Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 47-49 (D.D.C. 2005) (Lamberth, J.). Having propounded the relevant legal standard, the Court now applies it to plaintiffs' complaint.

## II. Application

### A. Plaintffs' Claims, Generally

Although the parties to this action have sparred on a variety of fronts, this Court chooses to focus its analysis, as made clear by the preceding legal standard, on the most basic: the authority of this Court to hear the claim at all. Defendants contend – and this Court agrees – that plaintiffs must exhaust all administrative remedies, under 7 U.S.C. § 6912(e), before this Court may exercise jurisdiction over plaintiffs' claims.

Section 6912(e) provides, in relevant part, that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action . . . against . . . the Department . . . or . . . an agency, office, officer, or employee of the Department." This Court is not alone in the opinion that Congress clearly intended Section 6912(e) to establish a jurisdictional hurdle that plaintiffs must clear before gaining access to the federal judicial forum. *See Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 95 (2d Cir. 1998). Thus, the Court now considers whether the plaintiffs exhausted all administrative appeal procedures before bringing suit.

Plaintiffs assert, pointing to 9 C.F.R. § 306.5 (2006),[1] that the USDA's "very informal notification mechanism" is inadequate to address plaintiffs' complaints of a misapplication of

---

[1] 9 C.F.R. § 306.5 provides that: "Any appeal from a decision of any Program employee shall be made to his/her immediate supervisor having jurisdiction over the subject mater of the appeal, except as otherwise provided in the applicable rules of practice."

regulatory authority under the Federal Meat Inspection Act ("FMIA"), 21 U.S.C.A. §§ 601-695 (West 1999 & Supp. 2006).  Further, the plaintiffs claim that the USDA has placed them in a regulatory catch-22.  Under 9 C.F.R. § 500.5(d) (2006), "if FSIS suspends inspection and *does not* hold the suspension action in abeyance . . . the establishment may request a hearing . . ." (emphasis added).  Since FSIS held the suspension in abeyance, plaintiffs claim to have been placed in a position from which MQF could not request an administrative remedy.  Plaintiffs allege that once placed in this position, FSIS demanded burdensome HACCP plan revisions that plaintiffs were forced to expend significant sums to make.  However, as the Court will discuss, below, the plaintiffs had available an administrative means of extricating themselves from the morass in which they allege the USDA placed them.

The plaintiffs' repeated assertion that the appeals process is informal does not convince this Court, as plaintiffs seem to contend, that any communication with the USDA might constitute an appeal.  Plaintiff Munsell seems to have made a good faith effort to resolve the problem facing MQF; at bottom, this failure to exhaust is caused by a lack of any kind of final refusal of plaintiffs' claims by the USDA that plaintiffs can present to this Court.  There seems only to have been an informal dialogue (as opposed to an appeals process) between Munsell, his Congressional representatives, and the USDA.  (*See* Munsell Decl. Exs. 8, 9, 10, 11.)  Further, although plaintiffs clearly disagree with the assessment that Munsell's concerns had been satisfactorily addressed in that dialogue, they did not dispute that conclusion with the USDA. (*See* Munsell Decl. Ex. 12.)  Had Munsell been plaintive, rather than amicable, in his communications with the USDA, there might be grounds on which this Court could find the exhaustion requirement satisfied.

In order to begin the process of exhausting their administrative remedies, plaintiffs should have *appealed* the suspension under 9 C.F.R. § 500.5(c), e.g., to Clark's supervisor: "MQF hereby appeals Clark's decision to suspend MQF's inspections . . ." That plaintiffs dispute the policy under which the suspension was issued is clear. That plaintiffs chafed under the suspension, though held in abeyance, is also clear. However, plaintiffs fail to convince this Court that they actually fought the suspension, administratively. Plaintiffs claim to have "[appealed] to agency officials and channels, regarding the required HACCP revisions, the unfair enforcement and suspension at [MQF], and the damage it inflicted on [MQF]." Nonetheless, plaintiffs have not provided any record of to whom those appeals were made or the exact nature of the appeals. Instead, as outlined above, plaintiffs have provided only information evidencing a dialogue on how to resolve the suspension of inspections at MQF.

Plaintiffs are correct in asserting that they need not have alleged, in their complaint, that they exhausted all administrative remedies. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). However, when faced with the looming prospect of a dismissal for failure to exhaust remedies, plaintiffs ought to have been able to provide the Court with some evidence that they had properly exhausted administrative appeals. Plaintiffs are best situated to provide some indication that they offered an official complaint through the proper channels, and must necessarily do so if plaintiffs then seek discovery to determine whether their complaints were treated as real complaints. Plaintiffs have not declared themselves to be in a position from which evidence of exhaustion is unavailable; they are in the best position to provide it, and have not done so. As such, plaintiffs cannot obtain discovery under Federal Rule of Civil Procedure

56(f). Further, as the Court does not find that the plaintiffs have exhausted their administrative remedies, the Court must recognize that it lacks subject matter jurisdiction to hear this case.

The plaintiffs also contend that even if they failed to exhaust administrative remedies, they fall within a judicially created exception to the exhaustion requirement. Assuming, *arguendo*, that this case falls outside the precedent set in *Avocados Plus*, 370 F.3d at 1247, this Court is nevertheless unconvinced that the plaintiffs are exempted from the exhaustion requirement by any of the authorities they cite. The exemptions are as follows: First, failure to exhaust administrative remedies may be excused, in certain circumstances, if plaintiff is making a collateral attack on the administrative process, itself. *See Mathews v. Eldridge*, 424 U.S. 319, 324-25, 329-32 (1976) (challenging the due process sufficiency of the procedure for terminating disability payments); *but see Illinois Council*, 529 U.S. at 3 (distinguishing *Eldridge* on the specific point in the administrative process, per the statute before the *Illinois Council* Court, when a collateral attack may be mounted). Second, failure to exhaust may also be excused if plaintiff shows irreparable harm would result from exhaustion. *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992) (citing *Thorbus v. Bowen*, 848 F.2d 901, 903 (8th Cir. 1988)). (3) Finally, failure to exhaust may be excused if exhaustion would be futile. *Illinois Council*, 529 U.S. at 13 (citing *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992)).

Plaintiffs, despite complaining of the informal nature of the administrative appeals process, do not attack that process as unconstitutional. Rather, plaintiffs complain that defendants' activities were impermissibly speech-chilling under the First Amendment. As the plaintiffs are not attacking the administrative appeals process, they would not fall under the first exception. This Court can also find no ground on which plaintiffs should be entitled to the

second or third exceptions (again, assuming *arguendo* that those exceptions are cognizable here). Plaintiffs have provided the Court only with a list of citations and the exhortation that the Court should find that plaintiffs surely fit one of the exceptions outlined therein. The Court declines to do so.

### B. Plaintiffs' Claims Constitutional Claims

Plaintiffs ask the Court to short-circuit the exhaustion requirement of 7 U.S.C. § 6912(e) by finding an independent source of jurisdiction in the plaintffs' First Amendment claims. The Court must decline. As noted in Section I, *supra*, precedent in this Circuit demands that when constitutional claims are "intertwined with . . . statutory [claims], and Congress has provided machinery for the resolution of the latter, a plaintiff must first pursue the administrative machinery." *Steadman*, 918 F.3d at 967.

The *Steadman* Court grappled with the Civil Service Reform Act, and concluded that when the administrative remedy "would have been fully effective in remedying the constitutional violation," plaintiffs must exhaust the administrative remedy. *Id*. In the instant case, plaintiffs seek an injunction preventing the defendants from requiring HACCP revisions without identifying discrepancies, from rejecting HACCP plans drawn directly from the guidance of USDA officials, and from rejecting previously un-rejected revisions to HACCP plans, absent intervening circumstances. (Am. Compl. ¶ 55.) Plaintiffs' purpose in requesting this injunctive relief is to halt the defendants' alleged retaliation for Munsell's exercise of his First Amendment rights. However, the damages that the plaintiffs suffered are not uniquely "constitutional" in scope, such that an administrative resolution of the plaintiffs' issues with the defendants would leave a portion of defendants' conduct unaddressed. This also applies to the

plaintiffs' request that defendants remove references to his lawful gun ownership from the USDA's records.  As such, the Court finds that plaintiffs' constitutional claims fall under the aegis of the jurisdictional exhaustion requirement.

### C.  Plaintffs' *Bivens* Claim

Lastly, the Court turns its attention to the *Bivens* action plaintiffs seek to bring against defendant Clark.  Despite plaintiffs' derision of the Eighth Circuit's holding in *Nebraska Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005), this Court finds that ruling persuasive.  In *Nebraska Beef*, the Eighth Circuit denied the plaintiff a *Bivens* action against USDA inspectors who allegedly violated a consent decision between Nebraska Beef, Ltd. and the USDA regarding several Noncompliance Records.  Subsequent to the agreement, the defendants "maliciously issued fifty-eight additional [Noncompliance Records]," damaging Nebraska Beef's reputation and business.  *Nebraska Beef*, 398 F.3d at 1082.  As the scenario before the Eighth Circuit in *Nebraska Beef* so closely mirrors the one currently before this Court, the Court opts to track, for the most part, the Eighth Circuit's reasoning in that case.

As did the *Nebraska Beef* Court, this Court finds that:  (1) There exists an administrative remedial scheme plaintiffs could otherwise employ against the USDA, suggesting that a judicially created remedy would be going beyond Congress' implicit intentions.  (2) The scheme makes only one mention of a right of action against USDA employees, strengthening the Court's presumption that Congress did not intend for the judiciary to create an alternative remedial scheme for aggrieved parties.   (3) Where Congress *does* contemplate action against USDA employees, it mandates exhaustion of administrative remedies, as discussed *supra*, Part II.A.

The Court focuses on the last element in dismissing this claim, along with plaintiffs' other claims, for lack of subject matter jurisdiction.

The plaintiffs' rejoinder that the *Nebraska Beef* Court fabricated, whole-cloth and without authority, a requirement that "Congress explicitly create a direct remedy against USDA employees" before *Bivens* could be extended to meat inspectors is a misreading of the Eighth Circuit's opinion. (Pls.' Opp'n Clark's Mot. Dismiss 21.)  The Eighth Circuit looked to its opinions in *Sinclair v. Hawke*, 314 F.3d 934 (8th Cir. 2003) and *McIntosh v. Turner*, 861 F.2d 524 (8th Cir. 1988) and concluded that if Congress had created a direct remedy against USDA employees and even if that remedy would not completely vindicate the rights asserted by plaintiffs, then the existence of even an incomplete remedy would still counsel against a judicially-created remedy.  *Nebraska Beef*, 398 F.3d at 1084.  Indeed, this interpretation is strongly suggested by a canon of statutory construction:  *expressio unius est exclusio alterius* – the expression of one thing is the exclusion of another.  In any event, the Eighth Circuit's reasoning is already familiar to this Court:  The Eighth Circuit relied heavily on *McIntosh* in its reasoning in *Nebraska Beef* – and heavily on a decision of the D.C. Circuit in deciding *McIntosh*.  *Compare Nebraska Beef*, 398 F.3d at 1084 *with McIntosh*, 861 F.2d at 526; *see McIntosh*, 861 F.2d at 526-27 (citing *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (per curiam) (en banc)).

The Court will not allow plaintiffs' direct action against Clark, without addressing any of the other criteria necessary to sustain such an action, because the Court finds plaintiffs did not exhaust administrative appeals.  Therefore, as with plaintiffs' other claims, the Court will dismiss the *Bivens* action against defendant Clark.

## **CONCLUSION**

For the foregoing reasons, the Court will dismiss plaintiffs' claims for lack of subject matter jurisdiction. Accordingly, the Court will deny plaintiffs' Motion [49] for Discovery on Jurisdictional and Exhaustion Issues and grant defendants' Motions to Dismiss [27, 28].

A separate order will issue this date.


Signed by Royce C. Lamberth, United States District Judge, on June 13, 2006.